*Formatted for Electronic Distribution* *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT



Filed & Entered
On Docket
11/22/2019

_____

**In re:**

    **Springfield Medical Care Systems, Inc.,**
        **Debtor-in-Possession.**

Case # 19-10285
Chapter 11

_____

Appearances:
  *D. Sam Anderson, Esq.*
  *Adam R. Prescott, Esq.*
  *Bernstein, Shur, Sawyer & Nelson, P.A.*
  *Portland, ME*
  *For the Debtor*

  *James Anderson, Esq.*
  *Elizabeth A. Glynn, Esq.*
  *Ryan Smith & Carbine, Ltd.*
  *Rutland, VT*
  *For Berkshire Bank*

  *Stephen D. Ellis, Esq.*
  *Sarah E. Cornwell, Esq.*
  *Paul Frank & Collins P.C.*
  *Burlington, VT*
  *For Timothy R. Ford*

  *Lisa M. Penpraze, Esq.*
  *Amy J. Ginsberg, Esq.*
  *Office of the United States Trustee*
  *Albany, NY*
  *For the United States Trustee*

## MEMORANDUM OF DECISION
### SUSTAINING IN PART AND OVERRULING IN PART U.S. TRUSTEE'S OBJECTION, GRANTING APPLICATION TO EMPLOY BERRY DUNN MCNEIL & PARKER, LLC *NUNC PRO TUNC* TO AUGUST 20, 2019, AND DIRECTING DEBTOR'S ATTORNEYS TO PAY ALLOWED GAP PERIOD COMPENSATION TO PROFESSIONAL

    The Debtor seeks to employ a financial advisor, to be paid by the bankruptcy estate, to assist it in its chapter 11 reorganization. The Debtor has worked with this professional for approximately 20 years, including in anticipation of the bankruptcy filing and throughout this bankruptcy case. While the Debtor has persuasively argued how vital this professional's assistance could be to its reorganization, the U.S. trustee has raised questions about: (i) whether the professional is disinterested and thus eligible for appointment; (ii) whether the Debtor made all necessary disclosures in its application; and (iii) whether the professional may be paid retroactively to the petition date, when the Debtor did not file the application until 100 days post-petition.

For the reasons set forth below, the Court grants appointment of the professional, but allows the appointment to be retroactive only 45 days, not the 100 days which the Debtor requests.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the Debtor's Application to be a core proceeding under 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## PROCEDURAL HISTORY

On October 4, 2019, Debtor Springfield Medical Care Systems, Inc. ("SMCS" or the "Debtor") filed an application to employ Berry Dunn McNeil & Parker, LLC ("BerryDunn" or the "Applicant") to provide certain auditing, accounting, tax, and financial modeling services to the Debtor in this chapter 11 case, effective nunc pro tunc to the petition date, June 26, 2019 (doc. # 191, the "Application"). Creditor Berkshire Bank has joined that Application (doc. # 240). Creditor Timothy Ford filed a limited objection (doc. # 198) solely for the purpose of contesting certain representations in the Application, which the Court does not discuss herein as that limited objection does not contest BerryDunn's eligibility for appointment or address the effective date of BerryDunn's appointment.[1] The U.S. trustee ("UST") filed an objection disputing both BerryDunn's eligibility for appointment and the Debtor's right to have this professional appointed as of the petition date, and asking the Court to deny the Application (doc. # 200, the "UST Objection").

SMCS filed a timely response to the UST Objection (doc. # 217, the "Debtor Response") and, at the Court's direction, SMCS also filed a supplement setting forth the cost of the services the Debtor's attorneys rendered in connection with the Application and the cost of the services BerryDunn rendered between the petition date and the date the Application was filed (doc. # 245, the "Debtor Supplement"). Accordingly, this contested matter is now fully submitted.

## LEGAL ISSUES PRESENTED

The fundamental legal issue presented in this case is whether BerryDunn is eligible to be appointed to render professional services to the Debtor and this bankruptcy estate. If so, then the next question is whether the Debtor has satisfied the legal requirements for BerryDunn's appointment to be effective as of the petition date, even though the Debtor did not file an application for appointment until more than three months after the petition was filed.

---

[1] This limited objection sought to clarify certain factual assertions in the Application and the attached affidavit regarding "management," "executive management," and the events precipitating the bankruptcy filing (see doc. # 198). Counsel for Mr. Ford confirmed at a hearing held on October 18, 2019, that the objection was only filed to flag the disputed language as potentially misleading or inaccurate as to those topics (see case # 19-10283, doc. # 200 (audio file for hearing held October 18, 2019)).

2

If the Court finds the appointment cannot be effective that much earlier than the date of the Application, then the Court must determine (a) the proper effective date of BerryDunn's appointment, (b) whether BerryDunn may be compensated by the estate for services it rendered between the petition date and the date of appointment, and (c) if BerryDunn may not be compensated by the estate for such services, then who should bear those costs.

## DISCUSSION

### A. The UST Objection

The UST Objection asks the Court to deny approval of the Application, based on three arguments: (i) BerryDunn is not disinterested, (ii) the Debtor failed to disclose all of BerryDunn's salient connections to parties involved in this case, and (iii) employment nunc pro tunc is not permitted under Cushman & Wakefield v. Keren P'ship (In re Keren P'ship), 189 F.3d 86 (2d Cir. 1999) because the Debtor did not timely file the Application (doc # 200, p.1). The Court will address each of these arguments, as well as the Debtor's responses, in the context of the controlling Second Circuit caselaw, the governing statute and rules, this Court's prior rulings on this topic, and equitable principles pertinent to the issues presented.

(i)    Is BerryDunn Disinterested?

The UST's assertion that BerryDunn is not "disinterested" rests primarily on his view that the Debtor may have a preference claim against BerryDunn (doc. # 200, pp. 4–5).[2] In support of his position, the UST cites two Third Circuit decisions, Staiano v. Pillowtex, Inc. (In re Pillowtex, Inc.), 304 F.3d 246, 255 (3rd Cir. 2002) and United States Trustee v. First Jersey Sec., Inc. (In re First Jersey Sec., Inc.), 180 F.3d 504, 509 (3rd Cir. 1999), and states, "it appears that BerryDunn received approximately $50,000 on behalf of antecedent debts" (doc. # 200, p. 5).[3]

In its Response, the Debtor points out that since BerryDunn has waived its pre-petition claim, it holds no interest materially adverse to the interest of the estate or any class of creditors, as is required by the definition of a "disinterested person" under 11 U.S.C. § 101(14)[4] (doc. # 217, pp. 1–2). The Debtor also denies the UST's allegation that BerryDunn is the recipient of payments in excess of $48,500 that are vulnerable to avoidance under § 547, instead estimating BerryDunn's potential exposure is likely to be no more than approximately $9,500 (doc. # 217, p. 4). Moreover, the Debtor argues, even this de minimis potential exposure is highly remote since the Debtor is under no obligation to pursue disgorgement of those payments, even if the payments meet the statutory definition of preferential transfers, and the Debtor would be unlikely to do so because the cost of litigation would undoubtedly exceed any recovery

---

[2] The UST also points out that BerryDunn holds a pre-petition claim against the Debtor, but does not rely on that as a basis for his objection since BerryDunn has agreed to waive that claim.
[3] In bold font, the UST specifies the total of all checks paid during the 90 days prior to commencement of this case was $48,464.34, but also reflects the age of the invoices underlying these payments varies from 80 to 257 days (doc. # 200, ¶¶ 7–8).
[4] All statutory citations hereafter refer to Title 11 United States Code (the "Bankruptcy Code"), unless otherwise indicated.

3

(id. at p. 5). Additionally, the Debtor contends that Pillowtex requires "a facially plausible claim of a substantial preference," see 304 F.3d. at 255, and "the holding in Pillowtex does not prohibit appointment of counsel on the mere specter of a preference claim," citing In re D&H Mach. Serv., 557 B.R. 609, 617 (Bankr. E.D. Tenn. 2016) (doc. # 217, pp. 5–6).

The UST has raised important points with regard to whether BerryDunn is disinterested, but after considering the record as a whole, the Court finds BerryDunn meets the statutory definition of a disinterested person. This is because, first, BerryDunn has waived its pre-petition claim; and second, any potential preference litigation that would pit the Debtor or estate against BerryDunn – and thereby put BerryDunn in the position of holding a materially adverse interest – is at best speculative, and hence, not a disqualifying factor under the caselaw of this Circuit. Therefore, the Court overrules the part of the UST Objection that alleges BerryDunn is ineligible for appointment due to a lack of disinterestedness.

(ii)    Has the Debtor Disclosed All of BerryDunn's Connections?

The importance of disclosing all connections, in every application and affidavit supporting the appointment of any professional in a bankruptcy case, cannot be overstated. As Bankruptcy Rule 2014 makes abundantly clear, it is the duty of the debtor's attorney to disclose all connections which bear on the disinterestedness of an applicant, so the Court has sufficient information to make a sound determination of whether the applicant is disinterested and eligible for appointment. See In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). Bankruptcy Rule 2014(a) states:

> An order approving the employment of … professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee …. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, <u>all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.</u>

Fed. R. Bankr. P. 2014(a) (emphasis added). The purpose of an application to employ is

> to provide the court (and the United States trustee) with information necessary to determine whether the professional's employment meets the broad tests of being in the best interest of the estate and, in the language of Rule 2014, necessary. To that end, a failure to disclose any fact that may influence the court's decision may result in a later determination that disclosure was inadequate and that sanctions should be imposed on the professional. The fact that disclosure was made elsewhere (e.g., in the debtor's schedules) is not likely to ameliorate a court's reaction to incomplete disclosure.

9 COLLIER ON BANKRUPTCY ¶ 2014.03 (Richard Levin & Henry J. Sommer eds., 16th ed. 2019). This Court's Local Bankruptcy Rules further elucidate the obligations of debtors' attorneys with respect to the employment of professionals:

> Whenever a party seeks to employ [a] … professional whose employment must be approved by the Court, pursuant to the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, <u>it is the duty of primary counsel for the employing party to ensure approval is properly sought</u>, to inform the professional of the applicable disclosure requirements, and to advise the professional of the requirements and risks, if any, pertaining to the professional's right to compensation and reimbursement of expenses from the estate.

Vt. LBR 2014-1(a) (emphasis added). The crucial point is that an applicant is not authorized to pick and choose which connections to disclose; the applicant must disclose all connections. The Court must be able to rely on the application and, based on the application, determine whether any of the disclosed connections impair the applicant's disinterestedness.

The UST alleges the Debtor's failure to disclose, in the Application, the Applicant's receipt of pre-petition payments from the Debtor as well as its connections with affiliated debtor Springfield Hospital, Inc. (the "Hospital") and its counsel, Murray, Plumb & Murray (see case # 19-10283), is a fatal flaw that requires denial of the Application (doc. # 200, pp. 6–7). Regarding the pre-petition payments, the Debtor argues its disclosure in the Application that the Debtor paid BerryDunn approximately $138,600 in the year prior to the petition date was sufficient, and further that the Debtor also disclosed the individual 90-day payments in its Statement of Financial Affairs and provided detailed payment information to the UST upon request (doc. # 217, ¶ 14). To counter the UST's allegations with respect to BerryDunn's failure to disclose its connections to the Hospital and the Hospital's counsel, the Debtor's attorneys essentially assert that certain connection should be so obvious as to not require specification in the Application and affidavit of connections:

> The work of Murray, Plumb & Murray on behalf of the Hospital is well known on the docket [of this bankruptcy case], and given the disclosure of BerryDunn's work for the Hospital, it appears self-evident that BerryDunn would also have a relationship with the Hospital's counsel. In addition, aware of the possibility that minor or remote connections may be overlooked by BerryDunn inadvertently, BerryDunn stated in the Ouellette Declaration [which it filed in support of the Application] that "in the past, BerryDunn may have served as a professional person in matters wholly unrelated to the Debtor or [this bankruptcy] Case, [in] which many other attorneys, financial advisors, and other professionals of the Debtor, its creditors, or other parties-in-interest may have served or currently serve as professional persons." The Debtor submits that this disclosure was sufficient to put interested parties on notice of BerryDunn's connections under the circumstances.

(doc. # 217, pp. 7–8). In a footnote, the Debtor also asks that "the Court consider [its] Reply as a supplemental disclosure to the Application" (id. at p. 8, n. 8).

The position the UST takes vis-à-vis the Application carries substantial weight. The UST Program, as the Department of Justice entity designated to be the watchdog for the bankruptcy system, see H.R. No. 595, 95th Cong., 1st Sess. 4 (1977), is charged with maintaining the integrity and effective administration of the bankruptcy system. Input from the UST with respect to possible deficiencies or errors in applications for the appointment of professionals provides an additional review, enhancing the likelihood that only qualified, impartial professionals play the key roles in bankruptcy estates – and sending a clear message to would-be appointees that they must comply with the statute and rules to be appointed to these crucial positions.

The UST discovered and identified a similarly important issue with respect to the scope of an applicant's connections in In re FiberMark, Inc., 2006 Bankr. LEXIS 4029, 2006 WL 723495 (Bankr. D. Vt. Mar. 11, 2006). There, the UST raised insightful queries, and asked this Court to explore beyond the usual boundaries of disclosure, to determine the impact of an applicant's representation of different constituencies across dozens of cases involving the same professionals on disinterestedness. After considering the UST's position, this Court weighed the crucial issue of precise compliance with the governing statute and rule against the adequacy of notice and risk of prejudice. Or, put another way, the Court balanced the value of meticulously full disclosure against the practical cost-benefit analysis associated with that level of disclosure. In Fibermark, the notice issue was whether the putative financial advisor, Chanin Capital Partners, LLC, was on notice it had a duty to disclose all chapter 11 cases in which both it and other professionals in the Fibermark case were engaged, and the respective role each played in each case. The Court found Chanin was not aware of that obligation, and there was a legitimate question about whether such an obligation would be reasonable.

In the instant case, the notice situation is the inverse of the Fibermark scenario. Here, the Debtor asserts the Court, the UST, and other parties in interest were all on notice of the Applicant's connections with the Debtor and the Hospital and, by extension, with the Hospital's attorneys. While there is no question the best practice is always to disclose all connections – including those that might appear obvious to the Applicant or the Debtor's attorneys – in an application to employ, that does not mean the failure to do so is always fatal to the Application.

The Court finds here, as it did in Fibermark, the disclosure shortcomings are not fatal. The requirement to comply meticulously with the disclosure requirements must be tempered with practicality, to strike a balance through which the purposes and goals of the disclosure requirements are met without creating financial disincentives to the professionals whose participation in bankruptcy cases would likely advance reorganization efforts, for the benefit of debtors and creditors alike:

> [T]he extent and format of [Rule 2014] disclosures may vary from case to case, as the circumstances of each case will define the "connections" that must be disclosed to provide the Court and parties in interest with sufficient information to determine

>whether the applicant is disinterested. Moreover, any determination of the sufficiency of the disclosures produced pursuant to Rule 2014 should be made by balancing the plain language of the rule's mandate that applicants disclose "all connections," in order to maintain integrity of the professional appointment process in bankruptcy cases, against the common sense analysis of what connections are reasonably defined as pertinent to the ultimate question of disinterestedness, so that competent professionals do not find the requirements of representing parties in bankruptcy cases so burdensome as to deter them from doing so.

Fibermark, 2006 Bankr. LEXIS 4029 at *37–38, 2006 WL 723495 at *11; accord In re Matco Elecs. Group, Inc., 383 B.R. 848, 855 (Bankr. N.D.N.Y. 2008).

The Debtor is correct that the Court, the UST, and other parties in interest were all on notice that the Applicant had connections with the Debtor, the Hospital, and the Hospital's attorneys – and of the Debtor's assertion that BerryDunn's understanding of the financial relationship between, and the intertwined operational structure of, the Debtor and the Hospital was crucial to its appointment in this case. At the case management conferences in this case, the Debtor has been explicit about its need for BerryDunn's assistance to disentangle the net amount of inter-entity transfers between SMCS and the Hospital. The connections the Applicant did not include in the Application were not unknown to the Court and key parties in interest, were previously disclosed informally in this case, and arguably the connection between BerryDunn and an unrelated debtor hospital also represented by the Hospital's attorneys was also encompassed by the catch-all provision of the Ouellette Declaration filed in support of the Application (see doc. # 191-1, ¶ 12). While the better practice would have been to disclose this in the Application, the UST has not demonstrated the Debtor's failure to do so caused any actual prejudice, under the facts and circumstances of this particular case.

While it is a rather close call, the Court finds the Debtor's failure to specifically disclose BerryDunn's connections to the Hospital and the Hospital's attorneys in the Application does not compel denial of the Applicant's appointment. Further, the Court finds the Debtor sufficiently disclosed its pre-petition payments to BerryDunn, albeit to some extent outside the Application, to satisfy the disclosure requirements of the Bankruptcy Code and Rules. Thus, the Court overrules the UST's second ground for objecting to BerryDunn's appointment.

(iii)    May BerryDunn be Appointed *Nunc Pro Tunc* to the Petition Date?

The UST's third, final, and most compelling argument urging denial of the Application relies on the standard for nunc pro tunc appointment the Second Circuit, as established in Cushman & Wakefield v. Keren P'ship (In re Keren P'ship), 189 F.3d 86 (2d Cir. 1999) (per curiam). In Keren, the Circuit held that nunc pro tunc approval of a professional's employment

>should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances.

7

Id. at 87 (citation omitted).

This Court has applied the Keren standard in several cases, each time emphasizing the strictness of the "extraordinary circumstances" requirement. See, e.g., In re Carpenter, 392 B.R. 97, 105 (Bankr. D. Vt. 2008) ("Courts considering the second Keren factor have held that dilatory and neglectful conduct in making a nunc pro tunc application does not constitute extraordinary circumstances."); In re Applied Biometrics Prods., Inc., Case # 02-10787 (Bankr. D. Vt. Mar. 6, 2003) (finding no extraordinary circumstances for delay caused by trustee in obtaining approval to employ special counsel); In re Plastic Techs. of Vt., Inc., Case # 13-10729 (Bankr. D. Vt. Feb. 3, 2014) (denying nunc pro tunc appointment where debtor failed to articulate extraordinary circumstances explaining delay). The standard for a showing of "extraordinary circumstances" is high; it requires nuanced inquiries and careful weighing of the particular factors bearing on the timing of the application. A showing of extraordinary circumstances requires more than mere oversight or excusable neglect. See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.), 352 F.3d 671, 679 (2d Cir. 2003) ("'simple neglect' on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify nunc pro tunc relief.").

The Debtor's explanation for the delay in seeking appointment of BerryDunn is threefold: (1) the Debtor's attorneys were busy with other compelling matters in the case, including negotiations with BerryDunn and the UST about BerryDunn's retention during the early (pre-Application) stage of the case; (2) the Debtor was busy with other pressing obligations, including its general healthcare business affairs; and (3) the Debtor was devoting extensive time and attention to working with BerryDunn to begin the financial modeling required for the Debtor's reorganization (doc. # 191, p. 10; doc. # 217, pp. 10–12). The Debtor also asserts in its papers, and argued at the hearing held on October 18, 2019, that the particular circumstances here warrant nunc pro tunc appointment because BerryDunn (a) already agreed to waive its pre-petition claim, (b) provided post-petition services to the Debtor without a retention order in place due to the time pressures of the case, and (c) has significant expertise in the healthcare industry and 20 years of experience providing accounting services to the Debtor and the Hospital, such that BerryDunn is uniquely well-suited to assist the Debtor with the necessary accounting and financial modeling services and important to the Debtor's reorganization efforts, and it would be difficult and inefficient to replace BerryDunn with a new financial advisor (doc. # 191, pp. 3, 10; doc. # 217, pp. 10–12; see also case # 19-10283, doc. # 220 (audio file of hearing held October 18, 2019)).

For purposes of this contested matter, the Court treats each of these statements as true and finds that while they would be sufficient to satisfy an "excusable neglect" standard, they fall short of establishing the Keren requirement that the delay in filing was caused by "extraordinary circumstances." This is an extremely high standard, and this Court has found only one published decision within the

Second Circuit that relies on the Keren standard and finds the movant established extraordinary circumstances warranting approval of a late-filed application to appoint a professional, In re Motors Liquidation Co., 438 B.R. 365 (Bankr. S.D.N.Y. 2010). In that case, Judge Gerber addressed an objection by the U.S. trustee which was, in many respects, similar to the UST Objection in this case, and an application for appointment of the asbestos claims committee's attorney, nunc pro tunc to the date he began work for the benefit of such claim holders, even though the application was not filed until eight months later. Judge Gerber explained the importance of Keren, the rationale for prompt applications for appointment generally, and the many factors a bankruptcy court must take into account in exercising its discretion with regard to appointment of professionals. The facts and circumstances in that case were truly extraordinary. Early in that large and very complex case, a creditor with an asbestos-related claim had been appointed to the creditors' committee (the "Asbestos Claim Creditor"). In October 2009, counsel for the debtor and the creditors' committee proposed to the Asbestos Claim Creditor's attorney that he serve as a subcommittee of the creditors' committee for the purposes of representing the interests of creditors holding asbestos-related claims. He began work for the benefit of asbestos claims holders immediately, due to time pressure to confirm a plan by April 2010. The UST later became uncomfortable with the idea of there being a subcommittee of an official committee, and on March 5, 2010, the UST created the asbestos claims committee and appointed the Asbestos Claim Creditor to it. On March 18, 2010, the asbestos claims committee filed its application to retain as its counsel the Asbestos Claim Creditor's attorney, nunc pro tunc to October 6, 2009. Judge Gerber found neither the attorney nor the asbestos claims committee had delayed in moving for counsel's appointment, it would not have been possible to file the application sooner, and there was no dispute the attorney had rendered valuable services. Based on the unusual circumstances of there not having been an official asbestos claims committee earlier in the case, and the diligence of the attorney, the bankruptcy court overruled the U.S. trustee's objection and granted nunc pro tunc appointment to a date eight months prior to the application.

  Here, the Debtor has neither demonstrated facts this Court finds to constitute extraordinary circumstances nor cited any case that holds facts similar to those at bar were sufficient to satisfy the Keren standard.

  In light of this Court's finding that BerryDunn is eligible for appointment, and based on the Application, the Debtor Response, the record in this case, the likelihood BerryDunn would play a critical role in the Debtor's reorganization efforts, and the strong support for Berry Dunn's appointment from the primary creditor, Berkshire Bank, the Court will grant appointment of BerryDunn. However, since the Court finds the Debtor has failed to demonstrate extraordinary circumstances caused the delay in the Debtor's filing of the Application, the Court sustains that part of the UST Objection which asks the Court to deny the Debtor's request for an effective date of appointment as of the petition date. In sum, the Court

finds that under Keren, it may appoint BerryDunn but it cannot grant appointment of BerryDunn nunc pro tunc to the petition date.

### A. Equitable Aspects of the Debtor's Application for Nunc Pro Tunc Appointment

Having found that BerryDunn is eligible to render professional services to the Debtor and this bankruptcy estate, and that BerryDunn's appointment cannot be effective as of the petition date, the Court considers the impact absolute denial of nunc pro tunc appointment could have on the Debtor's reorganization efforts, its creditors, the constituents the Debtor serves, and the unique circumstances of this Debtor, as a basis for investigating whether BerryDunn may be appointed and compensated for the services it has provided, based on the particular facts of this case, without violating the Second Circuit's mandate in Keren. As a court of equity, it is this Court's duty to consider other alternatives which will both comply with controlling law and provide the Debtor with the assistance it needs to move forward cost-effectively and efficiently in its reorganization, and avoid results which will cause manifest injustice. Here, that prompts the Court to address the questions identified above: (1) may BerryDunn's appointment be effective as of a date prior to the Application date, without violating Keren?; (2) if the Court determines such a date for appointment, may BerryDunn be compensated from the estate for the services it rendered between the petition date and the date of appointment (i.e., during the "gap period")?; and (3) if the Court determines BerryDunn should be compensated for services during that gap period, and the estate may not pay that compensation, then who should bear the responsibility for paying BerryDunn for that period?.

The Second Circuit has clearly articulated the discretionary powers of bankruptcy courts with respect to the approval of professional:

> When evaluating proposed retention, a bankruptcy court "should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." 3 Collier, ¶ 327.04[1][a] (citing In re Harold & Williams Dev. Co., 977 F.2d 906, 910 (4th Cir. 1992) ("The discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.")).

Bank Brussels Lambert v. Coan (In re AroChem Corp.), 176 F.3d 610, 621 (2d Cir. 1999); accord In re Motors Liquidation Co., 438 B.R. 365 (Bankr. S.D.N.Y. 2010) (noting the Second Circuit in Keren confirmed bankruptcy court discretionary power to approve nunc pro tunc retention of professionals).

(i) May BerryDunn's Appointment be *Nunc Pro Tunc* to a Post-Petition Date?

The Court begins this analysis by recognizing the foundational nexus between the specific requirements for appointment of professionals in bankruptcy cases and the integrity of the bankruptcy

10

process as a whole – both in reality and in terms of public perception. With that nexus as the guiding light, and mindful of the Second Circuit's guidance in <u>AroChem</u>, 176 F.3d at 621, the Court must, as a court of equity, examine carefully the impact requiring absolute compliance with the rules will have on the reorganization efforts of the debtor before it, to ascertain if there is a way to accomplish the purpose of the governing rules and jurisprudence without affirmatively harming the debtor, its chances for a successful reorganization, and the many constituencies who would become part of the collateral damage if the debtor fails. This latter consideration is particularly crucial when, as here, the Debtor is an important community institution, provider of vital healthcare services, and major employer for the region in which it is located. The Court must also avoid giving the impression that some professionals are so critical that the Court will waive the requirements for their appointment to ensure their participation in the case. That would undermine the mandatory nature of the applicable rules, enable attorneys to shirk their professional responsibilities, and undermine confidence in the integrity of the bankruptcy process. <u>See</u> H.R. No. 595, 95th Cong., 1st Sess. 95–96 (1977) (noting previous problems with cronyism in bankruptcy system); <u>see also</u> <u>In re Vouzianas</u>, 250 B.R. 478, 481 (E.D.N.Y. 2000) (noting purpose of § 327(a) is to "protect the bankruptcy estate and its creditors from unwarranted and gratuitous claims"), 3 <u>COLLIER ON BANKRUPTCY</u> ¶ 327.03 (noting purpose of requiring prior court authorization of employment is to provide court with a means of control over administrative expenses and an opportunity to review any conflicts, the professional's competency, and the necessity for the services to be performed).

    In seeking to discern the appropriate effective date for BerryDunn's appointment, the Court observes it is often unrealistic (if not impossible) for a debtor to file on the petition date a complete and thorough application for the appointment of each professional it will need in the case. This is the date when the debtor must file a complete and accurate petition with several schedules and statements, as well as other detailed documents. It is not unusual for debtors to file applications during the 30 days following commencement of the case, and applications filed during that first month of the case are routinely treated as timely. <u>See, e.g.,</u> <u>In re Fibermark</u>, Case # 04-10463 (Bankr. D. Vt. June 14, 2004) (granting application to employ filed May 7, 2004, effective as of April 7, 2004). Judge Gerber acknowledged this timing in describing the typical process for appointment of professionals in chapter 11 cases:

> [Bankruptcy Rule] 6003(a) provides that except to the extent necessary to avoid immediate and irreparable harm, an application to retain a professional can't be heard in the first 21 days of a case. But in nearly every chapter 11 case, counsel for the debtor must begin work from the very day the case was filed, and counsel for a creditors' committee must begin work immediately after selection …. Thus retention orders are <u>almost always retroactive to some extent</u>.

<u>Motors Liquidation</u>, 438 B.R. at 373, n. 23 (emphasis added). This underscores the inevitable dilemma of bankruptcy case professionals who must render services to the debtor from the moment the case is filed,

11

and cannot be appointed any earlier than the 21st day of the case, under Bankruptcy Rule 6003, even if they file their application with the petition – a feat that takes great effort to accomplish.

Here, the Debtor has given a reasonable explanation for why it did not file the Application sooner, the record demonstrates the principal parties in interest were aware of the role the Debtor intended BerryDunn to play in the case, the primary lender supports BerryDunn's appointment, and there is no basis in the record for finding either any lack of diligence or that prejudice would result from the granting of this Application. While the Debtor's explanation doesn't meet the stringent second prong of Keren necessary for approval nunc pro tunc to the petition date, it is sufficient to justify a slight enlargement of the typical 30-day period for the filing of such applications. On balance, the Court finds the circumstances in this case support appointing BerryDunn as of August 20, 2019, i.e., 45 days prior to the filing of the Application.

The Court makes this determination, as an exception to its usual 30-day rule, based on the particular facts of this case as well as the Debtor's unique type of business. The Debtor's role in delivering healthcare services to communities in southeastern Vermont and southwestern New Hampshire is notably distinguishable from the roles most other Debtors play in their communities. Moreover, the Debtor is subject to a level of regulatory scrutiny and operational urgency not present in a case where, for example, the debtor is producing widgets, managing real property, or providing less essential services. These exceptional demands on the Debtor's time and attention, combined with BerryDunn's lack of responsibility for the delay in filing the Application, the time pressure the Debtor placed on BerryDunn to begin financial modeling services necessary for the Debtor's reorganization effort, and the lack of prejudice caused by the delay, persuades this Court that a slight extension of the typical period for filing the application for appointment is warranted. Cf. Motor Liquidation, 438 B.R. at 376 (noting the court's equitable power and discretion to grant nunc pro tunc appointments, notwithstanding the Keren test).

   (ii)  May BerryDunn be Compensated from the Bankruptcy Estate for Services it Rendered During Gap Period?

Bankruptcy Code § 330(a)(1) does not authorize compensation of a professional from estate funds unless that professional has been appointed under § 327. Lamie v. United States Tr., 540 U.S. 526 (2004). "In the Second Circuit, there is a per se prohibition against compensating professionals for services rendered prior to a retention order." In re CCT Communs., Inc., 2010 Bankr. LEXIS 2947, *13, 2010 WL 3386947 (Bankr. S.D.N.Y. Aug. 24, 2010) (citing Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981), cert. denied, 455 U.S. 941, 102 S. Ct. 1435, 71 L. Ed. 2d 653 (1982); Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire Steamship Lines, Inc.), 509 F.2d 1242, 1245–46 (2d Cir. 1975); In re 245 Assocs., LLC., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995).

12

Accordingly, the estate may not compensate BerryDunn for services BerryDunn rendered prior to the effective date of its appointment.

    (iii) <u>Who Should Compensate BerryDunn for Gap Period Services</u>?

Having determined BerryDunn shall be appointed as of a date that is later than the petition date but prior to the application date, and that the estate may not compensate BerryDunn for services it rendered during the gap period between the petition and appointment dates, the Court turns to the question of whether it is appropriate to impose on another party the responsibility of compensating BerryDunn for services rendered during that gap period.

It is essential to the bankruptcy system that a professional qualified and willing to serve a bankruptcy estate does not suffer the economic consequences of a tardy or incomplete application for that professional's appointment, when the professional is not at fault. Interestingly, the District Court's decision in <u>Keren</u> (the rationale of which the Circuit Court adopted) specifically mentioned this when reviewing factors to consider as to the existence of extraordinary circumstances:

> <u>whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval</u>; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

<u>In re Keren P'ship</u>, 225 B.R. 303, 306–07 (S.D.N.Y. 1998), <u>aff'd</u>, <u>Cushman & Wakefield v. Keren P'ship (In re Keren P'ship)</u>, 189 F.3d 86 (2d Cir. 1999) (emphasis added) (citing <u>F/S Airlease, II, Inc. v. Simon</u>, 844 F.2d 99, 105–06 (3d Cir. 1987), <u>In re Arkansas</u>, 798 F.2d 645, 650 (3d Cir. 1986), and <u>In re Jarvis</u>, 53 F.3d 416, 421 (1st Cir. 1995),.

This Court has considered whether to shift financial responsibility for payment of a professional, and to whom, in at least two other cases. In <u>Carpenter</u>, 392 B.R. 97, 109 (Bankr. D. Vt. 2008), this Court denied <u>nunc pro tunc</u> modification of an application to employ, to add an inadvertently omitted buyer's premium to the auctioneer's commission, as there were no extraordinary circumstances justifying the movant trustee's eight-month delay, but found (i) the auctioneer was entitled to compensation for the excellent services he provided in the case and in recognition of his reasonable reliance upon the agreement the trustee made with him; (ii) since there was no basis in law to grant relief through <u>nunc pro tunc</u> modification of the order employing the professional, it was appropriate to rely on equitable principles to find a source of funds from which to compensate him; and (iii) there was good cause under the circumstances to compensate the auctioneer from the trustee's commission, shifting liability for the compensation from the innocent professional to the party responsible for filing a timely, accurate, and

13

complete application for appointment, namely, the trustee.[5] In making those findings, this Court relied on its earlier ruling in In re Applied Biometrics Prods., Inc., Case # 02-10787 (Bankr. D. Vt. Mar. 6, 2003), where it had found that, in order to both comply with Keren and compensate the professional for the valuable services it had provided to the estate, compensation had to be paid in a way that did not diminish the distribution to creditors. To accomplish that, the Court in Applied Biometrics directed the movant trustee's commission to be reduced by the amount necessary to fund the professional's compensation.

This Court must essentially ask here the same question it posed in Carpenter:

> After denying the Trustee's motion for nunc pro tunc relief, and considering the disclosure defects and equities involved in this case, the Court confronts this question: if the Auctioneer deserves to be paid according to the agreement the Trustee made with him, and it was the responsibility of the Trustee to ensure that the Auctioneer's entire compensation was approved in advance of the auction, and the Trustee failed to do this, why should it not be the Trustee, rather than the estate, that pays the extra compensation to the Auctioneer?

Carpenter, 392 B.R. at 107–08; see also Applied Biometrics Prods., Inc., Case # 02-10787 (Bankr. D. Vt. Mar. 6, 2003).

In the instant case, analogous to the circumstances in Carpenter, there is nothing to suggest BerryDunn was responsible for the oversight which has put its nunc pro tunc retention at risk, and it reasonably relied on Debtor's counsel to take all necessary steps to ensure approval was properly sought so BerryDunn could be compensated for the important services it rendered post-petition. In sum, the record in this case does not indicate any basis for penalizing BerryDunn. See Carpenter, 392 B.R. at 107 (finding auctioneer had reasonably relied on trustee and trustee was responsible for ensuring all requirements were satisfied); see also Vt. LBR 2014-1(a) ("it is the duty of primary counsel for the employing party to ensure approval is properly sought").

Finally, the Court must address the mechanics of how BerryDunn will be compensated for the services it rendered during the 55 days after the petition date and before the effective date of its appointment. As discussed above, in order to both comply with Keren and compensate BerryDunn for services it provided during this gap period that benefited the estate, compensation must be paid in a way that does not diminish the distribution to creditors. See Carpenter, 392 B.R. at 109; see also In re Applied Biometrics Prods., Inc., Case # 02-10787 (Bankr. D. Vt. Mar. 6, 2003). The Court will thus direct the party responsible for the delay in appointment, i.e., the Debtor's attorneys, to compensate BerryDunn. According to the Supplement, BerryDunn incurred fees totaling $6,850 for services to the Debtor during

---

[5] In Carpenter, this Court ordered the trustee, U.S. trustee, and any other interested party to show cause why the buyer's premium should not be paid from estate funds that would otherwise be paid to the trustee as a commission. The trustee consented to an additional distribution to the auctioneer, which the U.S. trustee supported, and the Court subsequently entered an order directing the trustee's commission be applied to the buyer's premium. See Carpenter, Case No. 07-10378 (Bankr. D. Vt. Jul. 21, 2008).

this gap period,[6] and the Debtor's counsel rendered services in connection with the Application that it values at $7,376 (doc. # 245). In balancing the equities here, the Court will direct the Debtor's attorneys to compensate BerryDunn for its gap period services from the fees this Court allows to the Debtor's attorneys. In this way, the estate will not be charged for any of BerryDunn's fees that are attributable to services rendered prior to the effective date of BerryDunn's appointment.

## CONCLUSION

For the reasons set forth above, the Court sustains in part, and overrules in part, the UST Objection. The Court finds the Applicant is a disinterested party, and has adequately disclosed connections to qualify for appointment under Bankruptcy Code § 327 and Bankruptcy Rule 2014. Therefore, the Court overrules the first two grounds of the UST Objection.

The Court sustains in part, and overrules in part, the third ground of the UST Objection, which disputes the Debtor's right to have BerryDunn appointed as of the petition date, based on the Second Circuit's Keren decision. In light of the significant delay in the Debtor's filing of the Application, the Court sustains the UST Objection to the extent the Debtor sought appointment of the Applicant nunc pro tunc to the petition date, and overrules the UST Objection to the extent the Debtor sought appointment effective any date prior to the Application.

With respect to the Application, the Court finds the Debtor has demonstrated BerryDunn is disinterested and eligible for appointment in this case, and that a slight enlargement of the usual 30-day time period to file the Application is warranted. Therefore, the Court appoints BerryDunn effective 45 days prior to the Application, i.e., as of August 20, 2019. The Court also finds the estate is precluded from paying BerryDunn for any services it rendered prior to the effective date of its appointment. Finally, the Court finds the interests of justice and integrity of the bankruptcy system require BerryDunn be compensated for the services it rendered during the gap period between the petition date and the appointment date, and that the Debtors attorneys must bear responsibility for paying BerryDunn for that period.

This constitutes the Court's findings of fact and conclusions of law.

November 22, 2019  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[6] This total comprises post-petition fees of $1,447.50 for June 2019, $2,566 for July 2019, and $2,836.50 for August 1–19, 2019 (see doc. # 245, Ex. A).